UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID MAYLE, | ) | Case No. 5:04CV1775 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | Magistrate Judge George J. Limbert |
| vs. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| Defendant. | ) | |

On August 26, 2004, David Mayle ("Petitioner"), a federal prisoner currently incarcerated at FMC Devens in Ayer, Massachusetts, filed a motion *pro se* to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. *See* ECF Dkt. #1. For the following reasons, the undersigned recommends that the Court grant Petitioner's Section 2255 motion.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Petitioner was charged with three counts of mail fraud, one count of forging Treasury checks and one count of making a false statement to a federal agent. ECF Dkt. #1; *United States v. Mayle*, 334 F.3d 552 (6th Cir. 2003). These charges arose from the fraudulent forging and cashing of $5,073.25 worth of Supplemental Security Income checks made payable to Joseph Newman ("Newman") from the Social Security Administration between November 1, 1995 and November 1, 1996. *Mayle*, 334 F.3d at 555. On April 4, 2001, after a two-day trial, a jury found Petitioner guilty on all five counts. *Id.; United States v. Mayle*, 5:01CR82, (N.D. Ohio 2001).

1

Petitioner's Presentence Investigation Report ("PSI") gave him a Base Offense Level ("BOL") of 6 and put him into Criminal History Category ("CHC") I.  ECF Dkt. #16.  The PSI also recommended an 8 point increase in his BOL based on two point increases for (1) the total amount of loss, (2) more than minimal planning, (3) vulnerable victim, and (4) obstruction of justice, raising the Adjusted Offense Level ("AOL") to 14.  *Id.*  The government filed a sentencing memorandum requesting an upward departure based on relevant conduct associated with the crime of conviction and an increase to Petitioner's CHC.  ECF Dkt. #16, Exhibit C.  Petitioner objected to the government's motions and requested a downward departure based on his poor physical condition. ECF Dkt. #16, Exhibit D.

On June 14, 2001, following a two-day sentencing hearing, the District Court imposed a sentence of 360 months incarceration.  *Sentencing Hearing Transcript*, pp. 272-89.  In arriving at this sentence, the Court began by finding that Petitioner's BOL was a 6.  *Id.* at p. 272.  The Court then increased the BOL by two levels because the amount of the fraud was between $5,000-$10,000 and by two levels because the fraud included more than minimal planning.  *Id.*  The Court increased the BOL by two additional levels because Newman had physical impairments that allowed him to receive disability and because his mental impairments qualified him as a vulnerable victim.  *Id.* at p. 272-73.  Then the Court found that Petitioner had obstructed the investigation by giving false statements to the secret service agent, bringing the AOL to 14.  *Sentencing Hearing Transcript*, p. 273.

Next, the Court granted the government's motion to increase the offense level further because "the sentencing guidelines do not accurately reflect the nature of the conduct found in this offense [and] such a sentence would be outside the heartland."  *Id.* at p. 274.  Specifically, the Court found

2

by both a preponderance and by clear and convincing evidence that Petitioner murdered Newman to facilitate the fraud offense.[1] *Id.* at 274, 276-278. Before increasing the offense level accordingly, the Court also granted the government's motion to increase the criminal history category "to reflect both his past conduct and potential for future violations." *Id.* at p. 278. Specifically, the Court found that a preponderance and clear and convincing evidence supported the finding that Petitioner also murdered Brett Woehlk ("Woehlk") in 1990 and Harrison Hazzard ("Hazzard") in 1994, but that the government failed to provide sufficient evidence that Petitioner had also killed Scott Cohen. *Sentencing Hearing Transcript*, p. 278-83.

Consequently, the Court made two upward departures. First, the Court increased the BOL by 23 levels, raising the offense level to 37. *Id.* at p. 283. The Court noted that the appropriate punishment for premeditated killing under the Guidelines would have been life imprisonment, but *Apprendi* foreclosed that result. *Id.* at p. 275, 283. Second, the Court increased Petitioner's CHC from I to IV. *Id.* at 283-85. The Court found Category II inapplicable because it was only equivalent to one felony conviction and here there was evidence of two past murders. *Sentencing Hearing Transcript*, p. 284. The Court found Category III inapplicable because it understated the seriousness of Petitioner's risk to the public. *Id.* Ultimately, the Court found that Category IV reflected both the uncharged past adult conduct of killing Woelhk and Hazzard and that Petitioner posed a threat to the public in the future. *Id.* at 285. Given an AOL of 37 and CHC IV, the Court arrived at a sentencing range of 292 to 360 months. *Id.* The Court then imposed a sentence of 360 months in

---

[1] The Court found that the Prosecution had proven its case by more than a preponderance of the evidence, so much so that the evidence was clear and convincing. *See* Sentence Trial Transcript, 278, 282; *See United States v. Mayle*, 334 F.3d 552, 556 (explaining the preponderance standard as set forth in *United States v. Watts*, 519 U.S. 148 (1997)).

prison, the statutory maximum allowed by running all five counts consecutively.  *Sentencing Hearing Transcript*, p. 285.  Further, the Court ordered restitution to be paid in the amount of the fraud found at trial.  *Id.*

Petitioner appealed his sentence to the Sixth Circuit Court of Appeals, based on the district court's upward departures from the Sentencing Guidelines.  *See United States v. Mayle*, 334 F.3d 552, 556 (6th Cir. 2003).  Specifically, Petitioner argued the following assignments of error:

> 1. THE TRIAL COURT ERRED AND RELIED ON UNRELIABLE EVIDENCE IN DETERMINING THAT DAVID MAYLE WAS RESPONSIBLE FOR THE DEATHS OF BRETT WOEHLK, JOSEPH NEWMAN AND HARRISON HAZZARD AND THEREFORE ENHANCING HIS SENTENCE AND DEPARTING UPWARD BASED UPON AN UNDER REPRESENTED CRIMINAL HISTORY CATEGORY.
>
> 2. THE TRIAL COURT ERRED IN DETERMINING THAT THE EVIDENCE PROVING THE ALLEGED MURDER OF JOSEPH NEWMAN BY DAVID MAYLE, WAS RELEVANT CONDUCT JUSTIFYING THE IMPOSITION OF AN ADDITIONAL THIRTY-YEAR SENTENCE.
>
> 3. THE TRIAL COURT ERRED WHEN THE EVIDENCE WAS INSUFFICIENT TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT AN UPWARD ADJUSTMENT FOR RELEVANT CONDUCT WAS JUSTIFIED[.]

ECF Dkt. #16, Exhibit 7.  Petitioner did not contest his underlying conviction or the pre-departure Sentencing Guideline calculations.  *Id.*

Reviewing the evidence presented at the sentencing hearing for relevance and reliability, the Sixth Circuit concluded that a preponderance of the evidence supported the District Court's finding that Petitioner killed Woelhk, Hazzard and Newman.  *Mayle*, 334 F.3d at 557-63.  The Sixth Circuit also found that killing Newman to facilitate the fraud offense was relevant conduct, an appropriate reason to depart from the guidelines, and that conduct similar to the relevant conduct was an

appropriate reason to increase the CHC.  *Id.* at 564-67.  Lastly, the panel found the departures reasonable and affirmed Petitioner's sentence on July 1, 2003.  *Id.* at 567-68.  Petitioner did not appeal to the United States Supreme Court.

On August 26, 2004, Petitioner filed the instant *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  ECF Dkt. #1.  Petitioner raised the following three grounds for relief:

1.  Defendant Was Denied His Constitution [sic] Right To Be Tried By A Jury (Rather Than The Judge) For 3 Murders Pursuant to Apprendi/Blakely[.]

2.  Defendant Was Wrongfully Convicted Of 3 Murders In His Sentencing Hearing Because Of Government Misconduct, Ineffective Assistance of Counsel, And Denial Of His Right To Confrontation[.]

3.  Defendant Is Actually Innocent Of The 3 Murders That The Court Held Him Responsible For.

*See* ECF Dkt. #1.  Also, Defendant raised an issue of ineffective assistance of appellate counsel with regards to appellate counsel's failure to raise grounds 1-3 on direct review.  *Id.*

The case was assigned to United States District Court Judge James S. Gwin, who referred the case to the undersigned for a report and recommendation on Petitioner's motion.  ECF Dkt. ## 6, 17.  On October 4, 2004, the government filed a response brief in opposition to Petitioner's motion.  ECF Dkt. #12.  On October 5, 2004, Attorney John F. McCaffrey was appointed to represent Petitioner.  On November 24, 2004, Petitioner, through counsel, filed a reply brief addressing the following issues:

A.  Mayle Was Denied His Sixth Amendment Right To A Jury Trial By Having His Sentenced [sic] Enhanced On The Basis Of Events Never Presented to a Jury, Nor Established By Proof Beyond A Reasonable Doubt

5

B.      The Rule Of *Apprendi* And *Blakely* Applies To Mayle's Sentence

C.      Mayle Was Denied Effective Assistance of Appellate Counsel

ECF Dkt. #16.  On December 28, 2004, Judge Gwin signed an order of recusal and the case was reassigned to United States District Court Judge John R. Adams.  ECF Dkt. #17.

On January 19, 2005 the undersigned ordered the parties to submit supplemental briefs addressing the applicability of *United States v. Booker*, 125 S. Ct. 738 (2005), handed down on January 12, 2005, including whether the rule in *Booker* applies retroactively to cases on collateral review.  ECF Dkt. #18.  Accordingly, Petitioner filed his supplemental brief on February 15, 2005.  ECF Dkt. #19.  On March 29, 2005, Petitioner filed a notice of subsequent case law *instanter*.  ECF Dkt. #20.  The United States of America did not file a supplemental response brief.  *See docket*.

## II.      STANDARD OF REVIEW

Under 28 U.S.C. § 2255, a federal inmate is provided with a post-conviction means of collaterally attacking his conviction or sentence.  *See In re Gregory*, 181 F.3d 713, 714 (6th Cir. 1999).  Section 2255 sets forth four grounds upon which federal prisoners may challenge their conviction or sentence:

1.      That the sentence was imposed in violation of the Constitution or laws of the United States;
2.      That the court was without jurisdiction to impose such sentence;
3.      That the sentence was in excess of the maximum authorized by law;
4.      That the sentence is otherwise subject to collateral attack.

*United States v. Hill*, 368 U.S. 424. 426-27 (1962); 28 U.S.C. § 2255.

In order to prevail on a Section 2255 motion alleging a constitutional error, "the petitioner must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *United States v. Watson*, 165 F.3d 486, 488 (6th Cir. 1999) (citing

*Brecht v. Abrahamso*n, 507 U.S. 619, 637-38 (1993)); *Griffin v. United States*, 30 F.3d 733, 736 (6th Cir. 2003).  Conversely, in order to prevail on a Section 2255 motion alleging non-constitutional error, the petitioner must establish a "fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (citing *United States v. Hill*, 368 U.S. 424, 428 (1968)).

## III.    LAW AND ANALYSIS

### A.    Petitioner's First Ground for Relief

In Petitioner's first ground for relief, Petitioner argues that he was deprived of his constitutional right to be tried by a jury for the three murders that were used to enhance his sentence in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Blakely v. Washington*, _____ U.S. _____, 124 S. Ct. 2531 (2004).  ECF Dkt. #1.  He also argues that the sentencing judge violated his Fifth and Sixth Amendment rights by increasing his sentence after finding, by a preponderance of the evidence, that Petitioner had committed three prior murders.  *Id.*  Petitioner, citing *Apprendi/Blakely*, argues that  his sentence was increased based upon charges not in the indictment and facts not found at trial and therefore, not proven beyond a reasonable doubt.  *Id.*  Lastly, Petitioner argues that the recent case of *United States v. Booker*, 125 S. Ct. 738 (2005), holding that any fact that increases a defendant's sentence must be submitted to the jury and proved beyond a reasonable doubt, should be applied to his case.  The undersigned will address each of the claims in turn.

### 1.    *Apprendi*, *Blakely* and *Booker*

In *Apprendi,* the United States Supreme Court held that any fact that increases the penalty

for a crime above the statutory maximum, other than the fact of a prior conviction, must be submitted to a jury and proven beyond a reasonable doubt.  *Apprendi*, 530 U.S. at 476.  In other words, a district judge cannot sentence a defendant to any more time than the statutory maximum allowed for the crime of conviction unless the facts that establish the basis for the upward departure are submitted to a jury and proven beyond a reasonable doubt.  The *Apprendi* court purposefully excepted the ability of the Judge to impose "a judgment *within the range* prescribed by statute."  *Id.* at 481 (emphasis in original).

In the instant case, Judge Gwin increased Petitioner's BOL by eight levels because the amount of the fraud was over $5,000, the fraud included more than minimal planning, there was a vulnerable victim and Petitioner obstructed the investigation by giving false statements.  Only the amount of the fraud and the obstruction of justice enhancements were found by the jury.  Also, Judge Gwin made a 23 level upward departure because he found by a preponderance of the evidence that Petitioner had killed Newman to facilitate the fraud.  *Sentencing Hearing Transcript*, p. 283.  Moreover, the Court increased Petitioner's CHC from I to IV based upon the uncharged conduct of killing Woelhk and Hazzard, and Petitioner's threat to the public.  Lastly, the Court imposed a sentence at the high end of the 292 to 360 month sentencing range.

Contrary to Petitioner's arguments, *Apprendi* held that a constitutional violation did not occur until the upward departures took a defendant above the statutory maximum for the crime of conviction.  Petitioner's 360 month sentence represented an increase over what Petitioner would have received under the sentencing guidelines without the enhancements.  However, 360 months is

the *statutory maximum* for the combined counts of which Petitioner was convicted.[2] The Sentencing

Guidelines allow a court to impose consecutive sentences on the counts in the indictment in order

to reach the desired sentence within the sentencing range.  United States Sentencing Guidelines

("Sentencing Guidelines") § 5G1.2(d).  Therefore, once the court determined that the sentencing

range was between 292 and 360 months based on the upward departures, the court was well within

its discretion to impose consecutive sentences of five years for count 1, five years for count 2, five

years for count 3, ten years for count 4 and five years for count 5, for a total of 360 months.

Accordingly, at the time of sentencing, there was no *Apprendi* violation because the sentencing court

did not sentence Petitioner above the statutory maximum.  *See United States v. Lawrence*, 308 F.3d

623, 634 (6th Cir. 2002) (explaining that there is no *Apprendi* violation unless the penalty for a crime

exceeds the prescribed statutory maximum); *Saccoccia v. United States*, 42 Fed. Appx. 476, 482 (1st

Cir. 2002) (explaining that *Apprendi* poses no bar under these circumstances to the imposition of

consecutive sentences under § 5G1.2(d)); *see also United States v. Reyes-Echevarria*, 345 F.3d 1,

7 (1st Cir. 2003) (finding it appropriate to enhance defendant's sentence based on relevant conduct

because the sentence imposed was within the statutory maximum).

In 2004, after Petitioner's conviction became final, the Supreme Court expanded its holding

in *Apprendi* and found that a defendant's Sixth Amendment right to a trial by jury was violated by

a state sentencing system that allowed a judge to apply factors to enhance a defendant's sentence

above the *sentencing guideline maximum* without those enhancement factors being proven to a jury

---

[2] Under 18 U.S.C. § 1341, the statutory maximum for mail fraud at the time Petitioner was convicted, was 5 years.  Petitioner was found guilty of three counts of mail fraud or a maximum of 15 years on counts one through three.  Under 18 U.S.C. § 510 the statutory maximum for forgery, found in count four, is 10 years.  Under 18 U.S.C. § 1001 the statutory maximum for obstruction of justice, found in count five, is 5 years.

beyond a reasonable doubt. *Blakely*, 124 S. Ct. at 2537-39. The Supreme Court invalidated the state of Washington's sentencing system after finding that the trial court erred in sentencing a defendant to a term of imprisonment greater than the statutory maximum of the standard range under state law. *Id.* at 2543. *Blakely*, however, did not apply to the United States Sentencing Guidelines. *See United States v. Koch*, 383 F.3d 436 (6th Cir. 2004) (*en banc*); *United States v. Lubowa*, 118 Fed. Appx. 888, 894 (6th Cir. 2004).

Subsequently, the Supreme Court extended the reasoning of *Apprendi* and *Blakely* to the United States Sentencing Guidelines in *United States v. Booker*, 125 S. Ct. 738, 755-56 (2005). In *Booker*, the Court held that the Sixth Amendment as construed in *Blakely* applied to the Federal Sentencing guidelines and thus, *any* fact that increases a defendant's sentence must be presented to a jury and proved beyond a reasonable doubt. *See Booker*, 125 S. Ct. at 155.

Petitioner's conviction became final on or about October 1, 2003, ninety days after the Sixth Circuit affirmed his sentence on direct review and well before either of the decisions in *Blakely* (2004) or *Booker* (2005). Therefore, the undersigned must determine if either case should be applied retroactively to cases on collateral review.

The argument against applying *Blakely* retroactively is based on the general rule that federal habeas corpus petitioners may not rely on new rules of criminal procedure handed down after their convictions have become final on direct appeal. *See Schriro v. Summerlin*, 124 S. Ct. 2519, 2523 (2004) (declining to retroactively apply the decision in *Ring v. Arizona*, 536 U.S. 584 (2002), a case which, like *Blakely*, expanded the Supreme Court's *Apprendi* decision, to cases that were already final on direct review); *In re Dean*, 375 F .3d 1287 (11th Cir. 2004) (noting that the Supreme Court has implied that *Blakely* was not retroactive); *United States v. Price*, 400 F.3d 844 (10th Cir. 2005)

10

(explaining that *Blakely* does not apply retroactively to cases on collateral review).  However, the Sixth Circuit has determined that *Blakely* challenges, like the one raised by Petitioner, are now governed by *Booker.*  *Humphress v. United States*, 398 F.3d 855 (6th Cir. 2005).  The Sixth Circuit has further held that *Booker* does not apply retroactively to cases on collateral review because *Booker* announced a new rule of criminal procedure.  *Id.* at 860-863 (analyzing fully the non-retroactivity of *Booker* in the context of 2255 petitions).  Therefore, neither *Blakely* nor *Booker* can be applied to Petitioner's case.

Petitioner, through counsel, also argues that his *Apprendi* claim should be governed by the decision in *Booker*.  *See* ECF Dkt. #19.  However, as discussed *supra*, *Booker* does not apply retroactively to cases on collateral review and *Apprendi's* realm is limited to providing relief where upward departures raise a defendant's sentence above the statutory maximum.  *Humpress,* 398 F.3d at 850; *Booker*, 125 S. Ct. at 750, 752-53.

In conclusion, the undersigned recommends that the Court reject Petitioner's arguments because, at the time of his sentencing, (1) the statutory maximum for *Apprendi* purposes was the statutory maximum as recited in the federal statute for the crimes of conviction, and Petitioner's sentence did not violate the statutory maximum proscribed, (2) the federal sentencing guidelines were mandatory, and not yet affected by the decision in *Booker*, and (3) neither *Blakely* nor *Booker* apply retroactively because they embody procedural rules that do not pass the non-retroactivity analysis.

Petitioner also argues that appellate counsel acted ineffectively by failing to raise these issues on direct review.  In order to prevail on an ineffective assistance of counsel claim, a petitioner must show that (1) counsel's performance fell below an objective standard of reasonableness and (2)

11

counsel's ineffectiveness prejudiced his defense so as to deprive him of his right to a fair trial. *Strickland v. Washington*, 466 U.S. 668 (1984).  To warrant relief, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  "Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir.1992) (en banc), *cert. denied*, 508 U.S. 975 (1993).

As discussed above, at the time of Petitioner's sentencing, no meritorious argument could be made under *Apprendi*, because his sentence did not exceed the statutory maximum, or under *Blakely*, because *Blakely* was not decided until after Petitioner's conviction became final.  The adequacy of counsel's arguments must be viewed from the perspective of the existing precedents at the time, not based on the hindsight of later decisions.  *Lilly v. Gilmore*, 988 F.2d 783, 786 (7th Cir. 1993).  "The Sixth Amendment does not require counsel to forecast changes or advances in the law, or to press meritless arguments before a court." *Id.*  Therefore, Petitioner has not shown that his appellate counsel's performance fell below an objective standard of reasonableness.

### 2.     Fifth and Sixth Amendment Claims

Petitioner also raises additional Fifth and Sixth Amendment claims in his first ground for relief.  However, Petitioner did not raise these issues on direct review.  If a challenge to a conviction or sentence is not made on direct appeal, it will be procedurally barred in a § 2255 challenge.  *United States v. Montano*, 398 F.3d 1276, 1279-1280 (11th Cir. 2005) (citing *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994)).  A defendant cannot overcome this procedural bar unless he can

12

demonstrate cause for the default and show actual prejudice suffered as a result of the alleged error. *Id.*  In the alternative, a defendant can also overcome the procedural bar created by the failure to appeal if he can demonstrate a fundamental miscarriage of justice.  Here, Petitioner argues ineffective assistance of appellate counsel to demonstrate cause for failure to raise the Fifth and Sixth Amendment grounds for relief on direct appeal.  Thus, in order to determine whether Petitioner can surmount the procedural bar to the first claim in his § 2255 petition, the undersigned must first examine the merits of Petitioner's underlying claim to determine if he has a meritorious claim under the Fifth or Sixth Amendment.  *United States v. Montano*, 398 F.3d 1276, 1279-1280 (11th Cir. 2005).

Petitioner's Sixth Amendment argument is largely based on hearsay violations and other evidentiary issues.  *See* ECF Dkt. #1, Exhibit 1.  However, as addressed in the context of Petitioner's second ground for relief below, Petitioner cannot re-litigate issues raised on direct appeal,  relating to the sufficiency or reliability of the evidence.  This claim is without merit.

Petitioner's Fifth Amendment argument attacks the District Court's stated grounds for departure in issuing Petitioner's sentence.  Specifically, Petitioner's includes in his first assignment of error questions  why the various degrees of murder were not discussed at his sentencing hearing. ECF Dkt. 1, Exhibit 1, p. 37.  Petitioner explains,

> There are many types of murder; murder with "malice aforethought;" "depraved-heart" murder; felony murder; 1st degree murder; and second degree murder.  There are also various defenses to murder, such as self defense, and reckless homicide.  None of these issues were even raised during defendant's sentencing hearing.

*Id.*  Upon review, the undersigned finds that the sentencing judge lacked the factual basis to establish the grounds for premeditation and consequently erred in basing an upward departure on the

13

sentencing guideline range for first degree murder. Therefore, the undersigned also finds that the Court finds that appellate counsel's failure to raise this ground on direct appeal constituted ineffective assistance of appellate counsel.

The Supreme Court has held that applying a preponderance of the evidence standard to prove facts that serve as the basis for upward departures at sentencing generally satisfies due process. *United States v. Watts*, 519 U.S. 148, 156 (1997).[3] The Sixth Circuit has also affirmed the use of a preponderance of the evidence standard in all cases, regardless of the degree of departure. *Mayle*, 334 F. 3d at 557 (citing *United States v. Graham*, 275 F.3d 490, 517 n. 19 (6th Cir. 2001)). In Petitioner's case, the Sixth Circuit affirmed the district court's categorization of the death of Newman as relevant conduct. That relevant conduct, established by a preponderance of the evidence, was used to increase Petitioner's sentence by 23 levels based on the guideline calculation for first degree murder.

At the time of Petitioner's sentencing, the Sentencing Guidelines permitted the sentencing court to impose a sentence outside the range established by the applicable guidelines if the court found an aggravating circumstance of a kind or to a degree not adequately taken into consideration by the applicable guideline.[4] U.S.S.G. § 5K2.0. Death, in this case, was outside of the guideline considerations in determining the appropriate sentence for fraud, forgery or false statement. In other words, causing the death of Newman was sufficiently outside of the heartland for the crimes of conviction that an increase in Petitioner's sentence was warranted.

---

[3] As recited above, *Booker* does not apply retroactively to cases such as Petitioner's that became final prior to the Supreme Court's determination in *Booker*; therefore, the undersigned will address the Fifth Amendment issue without regard to *Booker*.

[4] This is different from the type of departure authorized by the Guidelines where specific guidance for departure is given through a "cross-reference" to another section of the Guidelines. *See, e.g.,* U.S.S.G. §2D1.1(d).

Section 5K2.1 specifically authorizes an upward departure for death; however, 5K2.1 also explains that:

> Loss of life does not automatically suggest a sentence at or near the statutory maximum. The sentencing judge must give consideration to matters that would normally distinguish among levels of homicide, such as the defendant's state of mind and the degree or planning or preparation. ... The extent of the increase should depend on the dangerousness of the defendant's conduct, the extent to which death or serious injury was intended or knowingly risked, and the extent to which the offense level for the offense of conviction ... already reflects the risk of personal injury.

U.S.S.G. §5K2.1.

In this case, the district court adequately explained that the offenses of conviction, fraud, forgery and false statement, did not sufficiently reflect the risk of future personal injury. *Sentencing Hearing Transcript*, p. 274. Indeed, the guidelines use fraud as an example of a crime that the guideline commission did not take into consideration accompanying violent behavior when formulating the suggested punishment. U.S.S.G. §5K2.1. Additionally, the sentencing court found that Petitioner intended Newman's death, but failed to consider "matters that would normally distinguish among levels of homicide." *See* U.S.S.G. §5K2.1; *Sentencing Hearing Transcript*, p. 276. Instead, the district court found Petitioner responsible for the death of Newman by a preponderance of the evidence and then analogized that relevant conduct to first degree murder. *See Sentencing Hearing Transcript*, p. 274-75. The District Court summarized its findings in part,

> Specifically, the court finds that the fraud allegation in this case has resulted in the death – the conduct associated with the fraud allegation resulted in the death of Joseph Newman. The court finds that proof by both a preponderance of the evidence, and by clear and convincing evidence, that the defendant in this case was the person who murdered Mr. Newman. And that Mr. Newman died at the hands of the defendant, and died, in essence, so that the defendant could receive approximately $300 a month.

*Id.* at p. 274. The court also found that Newman and Petitioner had occupied property together in

November of 1995, that Newman's social security checks were being sent to that address and that the forgery began around that time. *Id.* at p. 276. Newman's personal affects were found at the property after Newman had been discovered missing and Petitioner lied about the fraud. *Id.* at p. 277.

While this evidence may support a finding of death, it does not support a finding of premeditation. There is a step missing between finding Petitioner responsible for a death and finding that death to be first degree murder. The district court specifically stated that it was influenced by the policy statements of the Sentencing Commission and the base offense level for premeditated killing when determining the level of appropriate departure. *Sentencing Hearing Transcript*, p. 275. While the evidence showing that Petitioner killed Newman is certainly disturbing, there is no evidence of premeditation, planning or preparation. Without premeditation, the appropriate level of departure might be based on second degree murder, which carries a lesser penalty and would merit a correspondingly lesser departure. *See* 18 U.S.C. § 1111. The safeguards of due process as enshrined in the requirement of a preponderance of the evidence standard fail when an upward departure is based on first degree murder without the accompanying finding of premeditation.

Two First Circuit cases deal with similar circumstances where prior killings served as the basis to upwardly depart from the guideline range for the narcotics crimes of conviction. *See United States v. Newton*, 326 F.3d 253, 265 (1st Cir. 2003); *United States v. Reyes-Echevarria*, 345 F.3d 1, 7 (1st Cir. 2003). Like the Sixth Circuit, the First Circuit found that relevant conduct includes prior uncharged criminal conduct. *Reyes-Echevarria*, 345 F.3d at 7; *Mayle*, 334 F.3d at 566. However, the First Circuit found consideration of relevant conduct appropriate under the Guidelines only in cases where the facts clearly supported a finding of premeditation. In *Newton*, the Court

16

found that the defendant had participated in the planning and torturing of the murder victims. *Newton*, 326 F.3d at 265.  In *Reyes-Echevarria*, the defendant had met three times to plan the victim's murder and then paid someone to commit the killing.  *Reyes-Echevarria*, 345 F.3d at 3.  In both cases, the sentencing courts applied the first degree murder "cross reference" because the victims were killed "under circumstances that would constitute murder under 18 U.S.C. § 1111." *Reyes-Echevarria*, 345 F.3d at 7; *Newton*, 326 F.3d at 265.  Likewise, in the case at bar, a 23 level increase to Petitioner's BOL should be accompanied by the considerations included in §5K2.1 and include findings of premeditation in order to ensure due process.

Petitioner's counsel at trial objected to the government's motion for an upward departure based on the murder provision of the sentencing guidelines.  *See* ECF Dkt. #1, Exhibit 2, p. 5-6. Specifically, Petitioner argued that in order to upwardly depart from the applicable guideline range based on first degree murder, the Court "would have to infer that Mr. Mayle actually intended to murder Mr. Newman in such a way as to constitute first degree murder, and not some lesser, unlawful killing."  *Id.* at 6.  Counsel acted deficiently in failing to raise this same argument on direct appeal.  This is especially true given that the sentencing guidelines specifically mandate that the levels of homicide be given consideration when determining sentence departures based on death. Failure to raise this issue was also prejudicial because a reasonable probability existed that the proceeding would have been different had Petitioner presented this argument to the Sixth Circuit. *See Strickland*, 466 U.S. at 694.  Further, any increase to Petitioner's sentence that resulted from counsel's failure is sufficient to show prejudice.  *See Glover v. United States*, 531 U.S. 198, 203 (2001) (finding that any amount of additional jail time has Constitutional significance); *United States v. Allen*, 53 Fed. Appx. 367, 376 (6th Cir. 2002) (citing *Glover*).  In this case, increasing Petitioner's

17

BOL by 23 levels added many months to his sentence. Therefore, Petitioner has shown cause for failure to raise this ground on direct review and the resulting prejudice necessary to establish ineffective assistance of appellate counsel.

Accordingly, the undersigned recommends that the Court GRANT Petitioner's first assignment of error and derivative ineffective assistance of appellate counsel claim and REMAND this case for re-sentencing or a determination of the facts that support an enhancement based on premeditated murder. The undersigned recommends that the Court DENY Petitioner's other grounds for relief contained in his first assignment of error.

### B.    Petitioner's Second Ground for Relief

In his second ground for relief, Petitioner argues that he was wrongfully convicted of three murders at the sentencing hearing because of governmental misconduct, ineffective assistance of counsel and denial of his right to confrontation. ECF Dkt. #1. He also argues that it was error to admit unreliable evidence and that the cumulative effect of the previous four errors resulted in a wrongful "conviction" for murder. *See id.*

### 1.    Governmental misconduct, denial of his right to confrontation and admission of hearsay evidence

In his memorandum in support of his motion, Petitioner spends a great deal of time explaining the circumstances surrounding the deaths of Woehlk, Harrison and Newman, as well as the circumstances surrounding the accompanying investigations. *See* ECF Dkt. #1, Exhibit 1. Petitioner argues that the Florida prosecutor conspired with the Ohio prosecutor to punish him for the three murders in violation of his right to confront the witnesses against him. Specifically, Petitioner argues that any evidence surrounding the three deaths was improperly admitted at

18

sentencing because it violated the rules of hearsay.  Petitioner stresses that "[he] could go on and on about how the unreliable evidence and the denial of his 6th Amendment right to confrontation produced an unreliable outcome[.]"  ECF Dkt. #1, Exhibit 1, p. 99.

The undersigned finds that insofar as this argument turns on the sufficiency, credibility or reliability of the evidence presented at the sentencing hearing, the Sixth Circuit has already determined these issues.  *See United States v. Mayle*, 334 F.3d 552, 563 (6th Cir. 2003) (concluding that no error had been committed by the sentencing court in making the factual findings).  A §2255 motion may not be used to re-litigate issues that were raised on direct appeal absent highly exceptional circumstances.  *DuPont v. United States*, 76 F.3d 108 (6th Cir. 1996); *see Weaver v. United States*, 418 F.2d 475, 476 (8th Cir. 1969) (finding that challenges to the sufficiency of the evidence must be raised on direct review and are not the proper subject for collateral review).  The claim asserted on direct appeal and the claim asserted in his motion to vacate are based on the same set of circumstances occurring at sentencing and are substantively identical.  Thus, these claims set forth in Petitioner's motion to vacate were raised, considered, and rejected on direct appeal.  The undersigned finds that Petitioner has presented no evidence to establish that this case presents "exceptional circumstances."  *See infra, Part C*.

In a similar case, the First Circuit explained,

[A] defendant convicted of participating in a drug conspiracy was sentenced to life imprisonment after the sentencing court held him accountable for the deaths of four people, even though the defendant did not participate directly in the actual killing of the victims and was not charged with murder in the district court. *United States v.Newton*, 326 F.3d 253, 265 (1st Cir. 2003).  The sentence was affirmed because "[a] sentencing court may . . . consider relevant conduct of the defendant for purposes of making Guidelines determinations, even if he has not been charged with -- and indeed, even if he has been acquitted of -- that conduct, so long as the conduct can be proved by a preponderance of the evidence." *Id.* (quoting *United States v. Lombard*, 72 F.3d 170 (1st Cir. 1995)).

19

*United States v. Reyes-Echevarria*, 345 F.3d 1, 7 (1st Cir. 2003).  Therefore, the undersigned recommends that the Court DENY Petitioner's claims of governmental misconduct, violations of his right to confrontation and admissibility of hearsay evidence.

### 2.    Ineffective Assistance of Counsel

In conjunction with the evidence admitted at the sentencing hearing, Petitioner raises claims of ineffective assistance of counsel and prosecutorial misconduct.  *See* ECF Dkt. #1.  Petitioner has correctly brought his ineffective assistance of counsel claim by way of the instant § 2255 motion rather than by direct appeal to the Sixth Circuit Court of Appeals.  *United States v. Long,* 190 F.3d 471, 478 (6th Cir.1999); *United States v. Pruitt,* 156 F.3d 638, 646 (6th Cir.1998); *See also United States v. Massaro*, 538 U.S. 500 (2003).

In order to demonstrate that counsel's performance was constitutionally ineffective, Petitioner must show that: (1) his counsel made such serious errors that he was not functioning as the counsel guaranteed by the Sixth amendment; and (2) his counsel's deficient performance prejudiced the defense by undermining the reliability of the result.  *Strickland*, 466 U.S. at 687.  Accordingly, in order to succeed on his ineffective assistance of counsel claim, Petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland,* 466 U.S. at 694; *Campbell v. United States*, 364 F.3d 727, 736 (6th Cir. 2004).

Through a deluge of words, Petitioner raises three grounds for ineffective assistance of counsel.  First, he asserts that counsel was not prepared for the sentencing hearing because she did not obtain the prior statements of witnesses who testified, she did not read the statements that she did have, she did not bring the statements to court and she did not review them with Petitioner.  *See*

20

ECF Dkt. #1, Exhibit 1, ¶148.  Second, Petitioner asserts the ineffective assistance of counsel because the prosecutor handed over "stacks" of materials on the morning of the sentencing hearing and due to the subsequent denial of a continuance based on that ground, counsel was unprepared and ineffective at the hearing.  *See* ECF Dkt. #1, Exhibit 1, ¶¶ 148-154.  Third, Petitioner alleges that counsel did not adequately investigate the case.  *See* ECF Dkt. #1, Exhibit 1, ¶154A.

Trial counsel's failure to prepare for the presentation of prosecution witnesses during the sentencing hearing can constitute ineffective assistance of counsel when the failure to prepare constitutes deficient performance that prejudices the petitioner's case because the result at sentencing or on appeal would likely have been different.  *See Strickland, supra*.  However, the undersigned finds that Petitioner has not brought forth sufficient evidence that his counsel was in fact unprepared to cross examine prosecution witnesses or that she had no grasp of their testimony.  In fact, the trial transcript reflects that Petitioner's counsel cross-examined each of the prosecution's witnesses and presented one of her own.  *See trial transcript*.  The right of cross-examination secured by the Confrontation Clause requires only an "opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985).  Further, there is no indication that counsel was not prepared to cross or call witnesses.  Mere allegations of lack of preparation can not support an ineffective assistance of counsel claim.

Further, the prosecutor's alleged misconduct cannot provide a basis for ineffective assistance of counsel because here, like above, there is no evidence that the materials handed over on the morning of the sentencing hearing were *Brady* materials or would have otherwise impacted the outcome of the case.  In order for a petitioner to be entitled to federal habeas relief for prosecutorial

21

misconduct, it must be determined whether there was a violation of the criminal defendant's federal constitutional rights which so infected the trial with unfairness as to make the resulting conviction a denial of due process. *See United States v. Fabiano*, 42 Fed. Appx. 408, 413-414 (10th Cir. 2002). Otherwise, in order to grant habeas relief based on prosecutorial misconduct that does not violate a specific guarantee under the Bill of Rights, the misconduct must be so egregious as to deny the petitioner due process. *Lorraine v. Coyle*, 291 F.3d 416, 439 (6th Cir. 2002). Petitioner does not point to any piece of material that was disclosed at the last minute nor shows how that disclosure would have exculpated him. Further, there is no evidence that the denial of the continuance was unreasonable or forced Petitioner to proceed with ineffective counsel. Rulings on requests for continuances are within the sound discretion of the district court. *Id.* Just because a continuance is requested and denied does not prove that counsel's performance was deficient without facts establishing that the denial resulted in actual prejudice to his defense. *See United States v. Hall*, 200 F.3d 962, 964 (6th Cir. 2000). In addition, the sentencing transcript indicates that the Judge not only indicated that counsel could re-cross a witness if she felt it necessary as the hearing progressed, but granted a twenty-minute continuance at a different time to provide counsel with more time to go over the materials. *Sentencing Hearing Transcript*, pp. 35, 67.

Lastly, Petitioner offers no evidence that would have been discovered had counsel investigated the case more to his liking. "In order to prevail on a § 2255 motion, the petitioner has the burden of proving by a preponderance of the evidence that his constitutional rights were denied or infringed." *U.S. v. Stifel*, 594 F.Supp. 1525, 1528 (N.D. Ohio, 1984) (citing *Wright v. United States*, 624 F.2d 557 (5th Cir.1980)). Petitioner has not pointed out any information that would have been discovered given a reasonable search of the facts surrounding the deaths of the three men that

22

was not in fact known at the time of sentencing. In sum, Petitioner offers no evidence, beyond the naked assertion of incompetency, that counsel's representation fell below an objective standard of reasonableness. If the defendant makes an insufficient showing on either component of the ineffective assistance of counsel inquiry, it is not necessary to examine the remaining prong of the test. *Strickland*, 466 U.S. at 697. Thus, the undersigned need not address the prejudice prong of the *Strickland* test. *See Barnes v. Elo*, 339 F.3d 496 (6th Cir. 2003).

The undersigned cannot conclude that counsel was unprepared, deficient or failed to investigate properly. Petitioner has failed to show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Consequently, the undersigned recommends that the Court DENY Petitioner's ineffective assistance of counsel claim.

### 3. Cumulative Error

Because the undersigned has recommended that the Court dismiss each of Petitioner's asserted claims regarding the ineffective assistance of counsel, governmental misconduct, denial of the right to confrontation and sufficiency of the evidence, a cumulative effect analysis of the errors is not necessary as counsel did not deficiently perform nor did Petitioner suffer resulting prejudice in the outcome of his trial. The undersigned also finds that the evidentiary issues raised by Petitioner are not well taken. Accordingly, the undersigned recommends that the Court dismiss Petitioner's claim since the cumulative effect of counsel's alleged ineffectiveness did not render him ineffective nor did the governmental misconduct render his counsel ineffective or the sentencing hearing unconstitutional. *See Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000).

### 4. Ineffective assistance of appellate counsel

The undersigned also finds no merit to Petitioner's claim of the ineffective assistance of appellate counsel for failing to raise the above grounds on direct review. *See* ECF Dkt. #1. First, appellate counsel did raise several evidentiary issues in the direct appeal. Second, direct appeal is not the proper forum to raise an ineffective assistance of counsel claim, but as mentioned above, habeas is the proper forum, therefore appellate counsel was not deficient for failing to raise it below. Third, it is clear that only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome. *Coleman v. Mitchell*, 268 F.3d 417, 430 (6th Cir. 2001). Accordingly, the undersigned recommends that the Court DENY any claims Petitioner raised as to ineffective assistance of appellate counsel as to ground for relief two.

**C.      Petitioner's Third Ground for Relief**

In his third ground for relief, Petitioner argues that he is actually innocent of the three deaths attributed to him at the sentencing hearing. ECF Dkt. #1. Actual innocence is not itself a substantive claim, but rather serves only to lift a procedural bar caused by a failure to timely file or to raise a claim on direct review. *Bousley v. United States*, 523 U.S. 614, 622, 140 L. Ed. 2d 828, 118 S. Ct. 1604. Specifically, a petitioner must show either cause and prejudice or a miscarriage of justice in order to obtain habeas review of an otherwise procedurally defaulted claim. *House v. Bell*, 386 F.3d 668, 677-678 (6th Cir. 2004) (quoting *Schlup v. Delo*, 513 U.S. 298, 130 L. Ed. 2d 808, 115 S. Ct. 851 (1995)). With respect to a miscarriage of justice, a petitioner must demonstrate that "a constitutional violation has probably resulted in the conviction of one who is actually innocent of the crime." *Schlup*, 513 U.S. at 324. Petitioner uses the "miscarriage of justice" language in his petition:

24

> Defendant Is Actually Innocent Of The 3 Murders, And It Would Be A Fundamental Miscarriage of Justice To Force Defendant To Serve 30 Years in Prison.  Defendant's Sentence Is An Effective Life Sentence Which Means He Will Die In Prison.

ECF Dkt. #1.

Further, Petitioner is not claiming actual innocence of the underlying conviction, but of the evidence submitted at the sentencing hearing.  Given this, Petitioner may be arguing that the standards applicable to actual innocence in capital cases apply here.  *See House*, 386 F.3d at 677-78 (quoting with favor the standard that requires a petitioner to make a colorable showing that he is actually innocent of the death penalty by presenting evidence that establishes, "but for the alleged constitutional error, the sentencing body could not have found any aggravating factors and thus the petitioner was ineligible for the death penalty."  *Sawyer v. Whitley*, 505 U.S. 333, 346 (1992) (internal citations omitted)).  However, the undersigned need not address that issue because Petitioner has failed to present any new credible evidence that support his allegations of constitutional error or exoneration from the three deaths.  Even though Petitioner presents a theory of what happened to each of the three men, each story involving the guilt of someone other than himself, he has not provided any concrete evidence that would have effected the outcome of the sentencing hearing.  It is not a manifest injustice for the sentencing court to credit the prosecution's evidence and not the defendant's evidence.  As the Supreme Court has noted, "experience has taught us that a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence[.]"  *House*, 386 F.3d at 677.

Petitioner raises an ineffective assistance of appellate counsel claim for failure to raise his actual innocence claim on direct appeal.  However, as stated above, Petitioner does not provide

substantive evidence of actual innocence.  Therefore, the undersigned recommends that the Court DENY Petitioner's claim of ineffective assistance of appellate counsel.

### D.  Request for Evidentiary Hearings

Petitioner requests an evidentiary hearing on grounds two and three.  ECF Dkt. #1.  28 U.S.C. § 2255 requires a district court to "grant a prompt hearing" when such a motion under § 2255 is filed, and to "determine the issues and make findings of fact and conclusions of law with respect thereto" unless "the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief."  *See Green v. United States*, 445 F.2d 847, 848 (6th Cir. 1971); *Bryan v. United States*, 721 F.2d 572, 577 (6th Cir. 1983), *cert. denied*, 465 U.S. 1038 (1984). Petitioner is not entitled to an evidentiary hearing in the instant matter because "the motion and the files and the records of the case conclusively show that [Petitioner] is entitled to no relief [as to grounds two and three]."  *Green*, 445 F.2d at 848.

## IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that the Court GRANT Petitioner's 2255 petition and REMAND this case for re-sentencing or a determination of the facts that support an enhancement based on premeditated murder.

Date:  __**May 16, 2005**__                              ___*/s/George J. Limbert*_____
                                             GEORGE J. LIMBERT
                                             U.S. MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of service of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).