IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID MAYLE, | ) | CASE NO.  5:04CV1775 |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Judge John R. Adams |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | <u>MEMORANDUM OF OPINION</u> |

On September 1, 2004, pursuant to 28 U.S.C. § 2255, David Mayle, petitioner, filed a motion to vacate, set aside, or correct his sentence of 360 months. This matter has been fully briefed, and the Court finds that an evidentiary hearing is unnecessary.  <u>See</u> Rule 8(a), Rules Governing Section 2255 Proceedings.  On May 16, 2005, a Magistrate Judge issued a Report and Recommendation in which he recommends that the motion be granted and the Petitioner be resentenced.

For the following reasons, the Court rejects the recommendation of the Magistrate Judge, and the motion is DENIED.

I.  <u>FACTS</u>

On February 21, 2001, the Petitioner was indicted as follows: three counts of mail fraud in violation of 18 U.S.C. § 1341; one count of forging Treasury checks in violation of 18 U.S.C. § 510(a)(1); and one count of making a false statement to federal agents in violation of 18 U.S.C. § 1001.  All counts stem from allegations that the Petitioner fraudulently forged and cashed Supplemental Security Income ("SSI") checks in the amount of $5073.25, made payable to Joseph Newman.

On April 4, 2001, a jury convicted the Petitioner on all five counts.  The presentence investigation report recommended a sentence pursuant to the United States Sentencing Guidelines ("U.S.S.G.") at an offense level 14, criminal history category I.  The resultant guideline sentencing range was 15-21 months.  The Government, however, moved to enhance the sentence above the guideline range on the ground that the Petitioner had committed various murders, including the murder of Joseph Newman whose checks the Petitioner had cashed.  The other alleged murder victims were Brett Woehlk in 1990 and  Harrison Hazzard in 1994.

On June 13 and 14, 2001, the Court (Judge James S. Gwin[1]) held a sentencing hearing. In its opinion affirming the sentence on direct appeal, the Sixth Circuit summarized the evidence elicited during the sentencing hearing as follows.

As to Brett Woehlk, the Government's evidence revealed that in 1990, the Petitioner managed a convenient store in Tampa, Florida, and he supervised Woehlk.  On April 3, 1990, the Petitioner accused Woehlk of stealing approximately $11,000 in store receipts.  Investigators, however, found that the specifics of the accusations raised suspicions.  Woehlk went missing on

---

[1]     On December 28, 2004, Judge Gwin recused himself, and the case was reassigned by random draw to Judge John R. Adams.

-2-

April 3, 1990, the day of the alleged theft, and he was found murdered several days later.  Paul DeLay, the Petitioner's live-in partner, told police that in the early morning of April 2, 1990, the Petitioner came home with blood on his hands.  The Petitioner told DeLay that he killed Woehlk during an argument over money at the store and had hidden the body.  The Petitioner was charged with murder and grand theft, but the murder charge was dismissed when DeLay recanted his story before a grand jury.  DeLay, however, having served a sentence for perjury before the grand jury, testified against the Petitioner at the sentencing hearing in the current case.  United States v. Mayle, 334 F.3d 552, 557-59 (6th Cir. 2003).

As to Harrison Hazzard, the Government's evidence revealed that in 1994, Hazzard was receiving SSI benefits as a result of cerebral palsy.  He disappeared on or about June 2, 1994, and he was last seen with the Petitioner on June 3, 1994, the same day Hazzard withdrew all his money from a bank account.  On June 8, 1994, the police found the Petitioner in Hazzard's apartment with another man, Robert Cassidy.  Cassidy told police a year or two later that the Defendant had forced him into various sex acts, some of which were performed at a location where Hazzard's remains were later found.  DeLay also testified that the Defendant on one occasion admitted killing Hazzard to obtain Hazzard's SSI checks.  Mayle, 334 F.3d at 560.

As to Joseph Newman, the Government's evidence revealed that his family was acquainted with the Petitioner's family.  In October 1995, Newman moved into an apartment several doors from the Petitioner.  Newman went missing around that time, and in late October 1995, Newman's sister saw the Petitioner in Newman's apartment removing Newman's belongings.  Despite a history of frequent visits with family members, Newman has never contacted his family since October 1995.

-3-

A Bank One representative testified that around this same time, numerous empty deposit envelopes were submitted to Newman's account.  Although no funds were actually deposited, approximately $4000 was withdrawn.  Bank One scheduled a meeting with Newman, to be held on October 26, 1995, regarding the account, but he did not show.  Newman also missed a meeting with a mental health advisor scheduled for November 21, 1995.   In addition, November 15, 1995 was the last date on which Newman personally collected his food stamps.  In December 1995 and January 1996, the Petitioner collected the food stamps on Newman's behalf.  Newman's food stamp benefits were terminated after he failed to appear at a county interview on January 10, 1996.

The Petitioner told Newman's family that Newman had left town to avoid an arrest warrant.  There were many inconsistencies in the Petitioner's story as to when and how often he had seen Newman.  The Petitioner also claimed that he was unaware of Newman's precise whereabouts, but was cashing Newman's SSI checks and leaving the money in the mailbox for Newman to retrieve.   Specifically, the Petitioner told investigators that he would receive the SSI checks and place them in plain envelopes in the mailbox.  Newman would then retrieve the envelopes, sign the checks, and place them back in the mailbox.  The Petitioner would then cash the signed checks and put the money in the mailbox for Newman to retrieve.  Government handwriting experts, however, testified at trial that Newman's signatures on the checks were actually forged traces.

On May 30, 1997, federal agents searched the Petitioner's residence.  Agents found mail addressed to Newman, and the Petitioner could not explain why such mail was not left in the mailbox for Newman to retrieve along with the SSI checks.  Numerous personal items were

-4-

found, including Newman's identification documents like his driver's license, birth certificate, his social security card, and others.

At the sentencing hearing, the Petitioner presented evidence of other possible explanations for Newman's disappearance, and Newman's body has never been found. However, based on the unbelievable statements the Petitioner gave to investigators, the fraudulent endorsement of Newman's SSI checks, and the presence of Newman's important personal items at the Petitioner's residence, Judge Gwin inferred that Newman had been murdered.  Mayle, 334 F.3d at 560-62.

At the sentencing hearing, Judge Gwin initially calculated the Petitioner's adjusted offense level to be 14, consistent with the probation officer's presentence report.  (Sentencing Tr. at 273.)  Judge Gwin then addressed the Government's motions to enhance the sentence based on the alleged murders.  He found as follows:

> Specifically, the court finds that the fraud allegation in this case had resulted in death – the conduct associated with the fraud allegation resulted in the death of Joseph Newman.  The court finds proof by both a preponderance of the evidence, and clear and convincing evidence, that the defendant in this case was the person who murdered Mr. Newman.  And that Mr. Newman died at the hands of the defendant, and died, in essence, so that the defendant could receive approximately $300 a month.

(Sentencing Tr. at 274.)

Based on these findings, Judge Gwin enhanced the offense level to 43, the offense level for first degree murder.  His reasoning was:

> The court, in determining what level to set the defendant at, is influenced in part by the policy statements set by the Sentencing Commission and by their application notes.
>
> As to a homicide, the sentencing guidelines set the base offense level at 43.  And the application notes indicate that the commission has

-5-

> concluded then, in the absence of the capital punishment, life imprisonment for premeditated killing.
>
> The Court finds that the Sentencing Commission and Congress, in approving their finding, finds it's appropriate when a death attends that there should be a significant increase.  The court finds additional support for this in guideline 5K2.1, wherein the Sentencing Commission has found that if death resulted, courts are given authority to increase the sentence above the authorized guideline. . . .
>
> [T]he court would be inclined to sentence the defendant to a level 43, finding that the defendant intended and did carry out the murder of Joseph Newman.  And that was relevant conduct in the commission of this offense and should be considered.

(Sentencing Tr. at 274-76.)

Some of the evidence highlighted by Judge Gwin included (1) the close proximity of the residences of the Petitioner and Newman; (2) the Petitioner fraudulently began signing and cashing Newman's SSI checks around the time Newman disappeared; (3) the presence of Newman's personal items and important identification documents at the Petitioner's residence; (4) the incredible and false statements the Petitioner gave to investigators, specifically his unbelievable story as to how he and Newman used the mailbox to get the SSI checks signed and cashed; and (5) the Petitioner's inconsistent statements and conduct generally when confronted by family and investigators to explain Newman's disappearance.  (Sentencing Tr. at 276-77.) Judge Gwin similarly found evidence supporting the murders of  Woehlk and Hazzard.  (See Sentencing Tr. at 278-83.)

Judge Gwin, therefore, enhanced the Petitioner's offense by level 23 levels to a level 37 based on the murder of Newman.  As further discussed below, Judge Gwin did not enhance the offense level to 43 (first degree murder) to avoid exceeding the statutory maximum sentence of 360 months, thereby following the requirements of Apprendi v. New Jersey, 503 U.S. 466

-6-

(2000).[2]  He enhanced the criminal history category to IV based upon the other murders, resulting in a guideline range of 292-365 months.  Judge Gwin sentenced the Petitioner to 360 months, the statutory maximum.  (Sentencing Tr. at 3, 275, -76, 283-85.)

On June 20, 2001, the Petitioner appealed the sentence.  He raised three grounds for relief:

1.     The trial court erred and relied on unreliable evidence in determining that David Mayle was responsible for the deaths of Brett Woehlk, Joseph Newman, and Harrison Hazzard and therefore enhancing his sentence and departing upward based upon an under represented criminal history category.

2.     The trial court erred in determining that the evidence proving the alleged murder of Joseph Newman by David Mayle, was relevant conduct justifying the imposition of an additional thirty-year sentence.

3.     The trial court erred when the evidence was insufficient to show by clear and convincing evidence that an upward departure adjustment for relevant conduct was justified.

On July 1, 2003, the Sixth Circuit affirmed.  United States v. Mayle, 334 F.3d 552 (6th Cir. 2003).  Applying the law at that time, the Sixth Circuit first concluded that the trial court's factual findings during sentencing, in this case the findings that the Petitioner committed three murders, was to be reviewed under the standard of preponderance of the evidence.  Id. at 557.  In response in part to the Petitioner's allegation in ground one that the trial court relied on "unreliable evidence", the Sixth Circuit noted that during sentencing "this circuit's case law have set a low bar for the kinds of evidence sentencing judges may rely on", and that the evidence is

---

[2]     The statutory maximum sentence was calculated as follows: 5 years for each of counts one, two, three, and five, and ten years on count 4.  With the sentence on all counts being served consecutively, the resulting maximum sentence was 360 months (30 years).  (See, e.g., Judgement at 2.)

reviewed for its "relevance and reliability, not for its conformity to conventional proofs." Id. at

558-59.   Under these standards, the Sixth Circuit concluded that there was sufficient evidence to

support the district court's findings that the Petitioner committed the three murders. Id. at 560,

562-63.

The Sixth Circuit next considered whether the enhancement of the offense level was

appropriate.  The first issue was whether the murder of Newman was "relevant conduct" upon

which the offense level could be enhanced.  The Sixth Circuit stated:

> The district court found that defendant caused Newman's death in order to
> facilitate the fraud offense. According to the district court, defendant
> caused the death of Newman "in essence, so that the defendant could
> receive approximately $300 a month."
>
> The district court's determination that the death of Newman was conduct
> that occurred during the commission of the fraud offense was not clearly
> erroneous. This finding is amply supported by the facts surrounding the
> disappearance of Newman and defendant's forgery of his SSI checks.

Id. at 564.  The Sixth Circuit next turned to the issue of whether the specific enhancement of 23

levels was appropriate.  After applying the factors contained in U.S.S.G. § 5K2.1, the Sixth

Circuit concluded that the 23-level enhancement was appropriate.  Id. at 564-65.  The Sixth

Circuit also upheld the enhanced criminal history category for the murders of Woehlk and

Hazzard.  Id. at 567.  Having found the upward departure was not based on impermissible

factors, the Sixth Circuit concluded that the sentence was reasonable pursuant to 18 U.S.C. §

3742(e) and (f).  Id. at 567-68.

On September 1, 2004, the Petitioner filed the current motion to vacate, set aside, or

correct his sentence pursuant to 28 U.S.C. § 2255.  He asserts three grounds for relief:

1.     Defendant was denied his constitutional right to be tried by a jury (rather
than the judge) for 3 murders pursuant to Apprendi/Blakely.

-8-

2.      Defendant was wrongfully convicted of three murders in his sentencing hearing because of government misconduct, ineffective assistance of counsel, and denial of his right to confrontation.

3.      Defendant is actually innocent of the 3 murders that the court held him responsible for.

In addition, the Petitioner asserts that he did not raise these issues on direct appeal because of ineffective assistance of appellate counsel.

## II.  LAW AND ANALYSIS

### A.  General Standards

28 U.S.C. § 2255 provides that a Court may vacate, set aside, or correct a sentence of one in federal custody:

> upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]

Collateral relief from a conviction or sentence is available if errors created a fundamental defect in the proceedings resulting in a complete miscarriage of justice, or were so egregious as to violate due process.  See Reed v. Farley, 512 U.S. 339, 348, 353 (1994), citing, Hill v. United States, 368 U.S. 424, 428 (1962); Zagi v. United States, 90 F.3d 130, 133-34 (6th Cir. 1996), cert. denied, 117 S.Ct.994 (1997); Gall v. United States, 21 F.3d 107, 109 (6th Cir. 1994); Ward v. United States, 995 F.2d 1317, 1319 (6th Cir. 1993); United States v. Ferguson, 918 F.2d 627, 630 (6th Cir. 1990).

Much of the basis for the Petitioner's motion stems from the alleged ineffective assistance of both his trial and appellate counsel.  The standard for determining whether counsel was ineffective was set forth by the United States Supreme Court in Strickland v. Washington,

-9-

466 U.S. 668 (1984).  "The benchmark for judging any claim of ineffectiveness must be whether

counsel's conduct so undermined the proper functioning of the adversarial process that the trial

cannot be relied on as having produced a just result."  Id. at 686; see also United States v.

Sanchez, 960 F.2d 610, 612 (6th Cir. 1992).  "When a true adversarial criminal trial has been

conducted — even if defense counsel may have made demonstrable errors — the kind of testing

envisioned by the Sixth Amendment has occurred."  United States v. Cronic, 466 U.S. 648, 657

(1984).  The Court does not view the purported errors in isolation.  Rather, the Court views the

errors within the context of the entire record to determine whether the errors, taken as a whole,

were so egregious as to undermine the fundamental fairness of the trial.  Lundy v. Campbell, 888

F.2d 472-73 (6th Cir. 1989), cert. denied, 495 U.S. 950 (1990).

 The analysis of counsel's performance is two-prong:

> First, the defendant must show that counsel's performance was deficient.
> This requires showing that counsel made errors so serious that counsel
> was not functioning as the "counsel" guaranteed to the defendant by the
> Sixth Amendment.  Second, the defendant must show that the deficient
> performance prejudiced the defense.  This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair trial, a trial
> whose result is reliable.  Unless a defendant can make both showings, it
> can not be said that the conviction . . .  resulted from a breakdown in the
> adversary process that renders the result unreliable.

Strickland, 466 U.S. at 687; see also West v. Seabold, 73 F.3d 81, 84 (6th Cir.), cert. denied, 116

S. Ct. 2569 (1996); Fields v. Bagley, 275 F.3d 478, 484 (6th Cir. 2001); Buell v. Mitchell, 274

F.3d 337, 359 (6th Cir. 2001); Greer v. Mitchell, 264 F.3d 663, 674 (6th Cir. 2001);  Ward v.

United States, 995 F.2d 1317, 1321 (6th Cir. 1993); United States v. Morrow, 977 F.2d 222, 229

(6th Cir. 1992), cert. denied, 508 U.S. 975 (1993).

 The performance inquiry is whether counsel's assistance was reasonable considering all

the circumstances. Strickland, 466 U.S. at 688. The Court "must indulge a strong presumption"

counsel's assistance was reasonable, and avoid the "distorting effects of hindsight". Id. at 689;

see also Stanford v. Parker, 266 F.3d 442, 454 (6th Cir. 2001). A claim of unreasonable

performance must be evidenced by more than unsupported generalizations. Vick v. United

States, 730 F.2d 707, 708 (11th Cir. 1984). Rather, a petitioner must point to specific acts or

omissions that fell outside the wide range of competent assistance. Patel v. United States, 19

F.3d 1231, 1235 (7th Cir. 1994). Counsel's performance is to be measured at the time of the

representation. Stanford, 266 F.3d at 454. Furthermore, the Petitioner bears the burden of

overcoming a presumption that the challenged conduct might be considered sound trial strategy.

Miller v. Francis, 269 F.3d 609, 615 (6th Cir. 2001), cert. denied, 535 U.S. 1011 (2002).

      Prejudice is demonstrated when there is a reasonable probability that but for counsel's

errors, the result would have been different. A "reasonable probability" is one sufficient to

undermine confidence in the outcome. Strickland, 466 U.S. at 694. The Court determines

prejudice with attention to whether the result of the proceeding was fundamentally unfair or

unreliable. Lockhart v. Fretwell, 506 U.S. 364, 369 (1993). "Unreliability does not result if the

ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right

to which the law entitles him." Id. at 372.

      As to appellate counsel, appellate counsel need not raise every colorable claim on appeal.

Jones v. Barnes, 463 U.S. 745, 753-54 (1983). However, the Strickland standard applies to

conduct by appellate counsel. See Mapes v. Coyle, 171 F.3d 408 (6th Cir. 1999). In Mapes, the

Sixth Circuit listed eleven considerations in analyzing performance of appellate counsel. The

Sixth Circuit, however, cautioned that the list is not exhaustive and not meant to require a

"score" type of analysis. Id. at 427-28.

    B.  Apprendi, Blakely, and Booker

In his first ground for relief, the Petitioner claims that he was denied his constitutional right to be tried by a jury, rather than a judge, for commission of the three murders for which his sentence was enhanced. He relies principally on Apprendi v. New Jersey, 503 U.S. 466 (2000), Blakely v. Washington, 542 U.S. 296 (2004), and United States v. Booker, 543 U.S. 220 (2005). The Magistrate Judge recommends that this portion of his claim be rejected because there was no violation of Apprendi, and Blakely and Booker cannot be applied retroactively to the Petitioner's sentence. The Court agrees.

In Apprendi, the defendant was charged under New Jersey law with a "second degree" offense, an offense category that ordinarily carried a maximum sentence of ten years. New Jersey's "hate crime" law, however, provided that if the trial judge found that the offense was committed with the purpose to intimidate another based upon certain protected characteristics (race or gender for example), the maximum sentence increased to twenty years. Apprendi's sentence was enhanced beyond ten years based upon a judicial finding of racial intimidation. The Supreme Court reversed stating that the judicial finding of racial intimidation improperly enhanced the sentence beyond the typical ten-year maximum. For such an enhancement, the finding had to be made by a jury beyond a reasonable doubt, rather than by a judge based on a preponderance of the evidence. Apprendi held: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490.

Judge Gwin was mindful of Apprendi while sentencing the Petitioner. He looked to the

criminal statutes defining the offenses charged and calculated the "prescribed statutory maximum" to be 30 years, or 360 months.  He limited his enhancement to avoid a sentence beyond this statutory maximum, thereby avoiding an <u>Apprendi</u> violation.  (Sentencing Tr. at 3, 275-76, 283-85.) Furthermore, because the enhancement did not go beyond the "prescribed statutory maximum", the murders did not have to be submitted to a jury for proof beyond a reasonable doubt.

In <u>Apprendi</u>, the Supreme Court never actually defined what constitutes the "prescribed statutory maximum".  Judge Gwin presumed, and reasonably so, that the "prescribed statutory maximum" was set forth in the substantive criminal statutes which defined the offenses charged, in this case thirty years.  This approach, however, was called into question in <u>Blakely</u>.

<u>Blakely</u> was decided after the Petitioner's direct appeal became final.  There, the Supreme Court analyzed the sentencing scheme of Washington state, which bears resemblance to the federal sentencing guidelines.  The defendant was charged with "second-degree kidnaping", a "class B felony".  Generally, class B felonies carried a maximum sentence of ten years.  Another statute, however, provided that second-degree kidnaping would carry a "standard range" sentence of 49 to 53 months.  A judge, however, could impose a sentence above the standard range upon a finding of "substantial and compelling reasons justifying an exceptional sentence." The defendant in <u>Blakely</u> received a 90-month sentence upon a judicial finding that the defendant had acted with "deliberate cruelty".

Applying <u>Apprendi</u>, the Supreme Court ruled that the enhanced sentence was unconstitutional because the issue of deliberate cruelty had not been submitted to a jury for proof beyond a reasonable doubt.  The government argued that there was no <u>Apprendi</u> violation

-13-

because the 90-month sentence was still within the ten-year maximum for class B felonies

generally.  The Supreme Court rejected this argument:

> Our precedents make clear, however, that the "statutory maximum" for
> *Apprendi* purposes is the maximum sentence a judge may impose solely
> on the basis of the facts reflected in the jury verdict or admitted by the
> defendant. [Citations omitted.] In other words, the relevant "statutory
> maximum" is not the maximum sentence a judge may impose after finding
> additional facts, but the maximum he may impose without any additional
> findings.

Blakely, 542 U.S. at 303-04.  In Blakely, therefore, the "prescribed statutory maximum" was 53

months, the top of the "standard range", and not ten years as stated in the statute relating to class

B felonies generally.

Accordingly, Blakely implied that in federal sentencing, the "prescribed statutory

maximum" would be the top of the guideline range prior to any judicial fact finding.  The case,

however, was silent as to whether the principles which were applied to the sentencing scheme of

Washington state would apply to the federal sentencing guidelines.  This question was answered

by the Supreme Court in Booker.

In more explicit fashion, the Supreme Court in Booker stated that the "prescribed

statutory maximum" is the top of the guideline range prior to any enhancements based on

judicial fact finding.  The Court (J. Stevens' opinion) reasoned that the guidelines were

mandatory pursuant to 18 U.S.C. § 3553(b), which states that the court "shall impose a sentence

of the kind, and within the range" of the guidelines, subject to specific and limited departures.

As mandatory, the guidelines, and not the statutes which define the offenses, set the maximum

sentence.  Booker, 543 U.S. at 234-35.

Remedially, the Supreme Court did not invalidate the entire guidelines scheme.  Rather,

-14-

the court (J. Breyer's opinion) severed only certain statutory provisions, including 18 U.S.C. § 3553(b)(1) and (e), which made the guidelines mandatory. The guidelines are now considered advisory, and the sentencing court is bound to consider the factors enumerated in 18 U.S.C. § 3553(a).  Booker, 543 U.S. at 264-65.   J. Breyer's opinion, however, still recognizes that the Sixth Amendment is violated "by the imposition of an enhanced sentence under the United States Sentencing Guidelines based on the sentencing judge's determination of a fact (other than a prior conviction) that was not found by the jury or admitted by the defendant." Id. at 245.

The Petitioner argues that Apprendi, Blakely, and Booker render his enhanced sentence unconstitutional.[3]  Booker and Blakely, however, are unavailable because they do not apply retroactively to cases on collateral review pursuant to 28 U.S.C. § 2255.  Humphress v. United States, 398 F.3d 855, 860 (6th Cir.), cert. denied, 126 S. Ct. 1991 (2005); see also Briggs v. United States, 187 Fed. Appx. 540, 542 n. 1 (6th Cir. 2006) (unreported); United States v. Cooper, 168 Fed. Appx. 689 (6th Cir. 2006) (unreported), cert. denied, 127 S. Ct. 684 (2006); Swain v. United States, 155 Fed. Appx. 827, 832 (6th Cir. 2005) (unreported); Thelen v. United States, 131 Fed. Appx. 61, 65 n. 3 (6th Cir. 2005) (unreported), cert. denied, 126 S. Ct. 499 (2005).[4]

_____

[3]     Blakely was decided before the Petitioner filed the current motion and was raised at the outset.  Booker was decided subsequently, and its applicability was asserted in a supplemental brief filed pursuant to the Magistrate Judge's instructions. (See Docket No. 19.)

[4]     The Sixth's Circuit's denial of retroactivity is consistent with case law from other circuits.  See, e.g., Foster v. Quarterman, 466 F.3d 359, 369-70 (5th Cir.), cert. denied, 127 S. Ct. 141 (2006); United States v. Dago, 441 F.3d 1238, 1252 (10th Cir. 2006); United States v. Hernandez, 436 F.3d 851, 855 (8th Cir.), cert. denied, 126 S. Ct. 2341 (2006); United States v. White, 416 F.3d 1313, 1316 (11th Cir. 2005); Schardt v. Payne, 414 F.3d 1025 (9th Cir. 2005); Green v. United States,

-15-

The Petitioner makes several arguments in an attempt to avoid the decisions holding that Booker and Blakely cannot be applied retroactively on collateral review.  He argues that because Blakely and Booker are merely applications of Apprendi, they are at least retroactive to Apprendi's decision date of June 26, 2000.  However, there is no support for this argument of limited retroactivity, and the argument is contrary to the explicit holdings of the case law cited in the previous paragraph.  In addition, Apprendi itself relies on earlier case law going as far back as, for example, In re Winship, 397 U.S. 358 (1970).  What then would be the basis not to apply these cases retroactively to 1970 (or earlier)?  There is no principled way to apply the Petitioner's argument to the date of any particular decision.  The Petitioner's argument must be rejected because, if taken to its logical conclusion, principles governing retroactivity would become meaningless.

The Petitioner also argues that Judge Gwin misapplied Apprendi *ab initio* by calculating the "prescribed statutory maximum" to be 360 months based upon the criminal provisions which define the offenses charged.  The Petitioner argues that a correct application of Apprendi required the "prescribed statutory maximum" at most to be the guideline maximum of 21 months, as evidenced by the subsequent decisions in Blakely and Booker.  The argument that Judge Gwin misapplied Apprendi *ab initio* is simply a restatement of the argument that Blakely and Booker should be applied retroactively.  Creative fashioning of the argument cannot avoid established precedent that Blakely and Booker cannot be applied retroactively in this case.

In addition, the Court concludes that Judge Gwin's application of Apprendi was reasonable in view of the state of the law at that time.  Prior to Blakely, the Sixth Circuit

397 F.3d 101, 103 (2d Cir.  2005).

-16-

repeatedly interpreted the "prescribed statutory maximum" to be the maximum sentence as set forth in the statute defining the offense charged.  Apprendi did not apply to enhancements that increased the guideline range within such maximum.  United States v. Lawrence, 308 F.3d 623, 634 (6th Cir. 2002) (statutory maximum was set forth in 21 U.S.C. § 841(b)(1)(C)).  In United States v. Garcia, 252 F.3d 838 (6th Cir. 2001), the court upheld a sentence by a trial judge who, like Judge Gwin here, enhanced the offense level in a manner that did not exceed maximum sentence set forth in the substantive criminal statute.  The Sixth Circuit stated: "Apprendi does not purport to apply to penalties in excess of any particular range or based on any particular offense level under the Sentencing Guidelines."  Id. at 843.

Although Apprendi arguments often arose in applying the drug quantity statutes, as in Garcia and Lawrence, in non-drug contexts the Sixth Circuit likewise held that Apprendi did not apply to guideline enhancements within the statutory maximum.  For example, in United States v. Murillo-Iniguez, 318 F.3d 709 (6th Cir. 2003), the defendant was  was charged with an immigration violation, particularly illegal reentry into the United States.  The Sixth Circuit concluded that the prescribed statutory maximum was twenty years, as set forth in 8 U.S.C. § 1326.  The defendant's guideline range was enhanced by a judicially found fact, but the sentence received, seventy months, was upheld because it was within the twenty-year maximum.  The Sixth Circuit quoted Garcia, and stated further:  "So long as the penalty does not exceed the maximum statutory penalty allowed for the offense, then Apprendi is not implicated."  Id. at 713.

Accordingly, Judge Gwin applied Apprendi in the manner required by the Sixth Circuit at that time.  Absent an improper retroactive application of Blakely or Booker, there is no basis to conclude that Judge Gwin erred in enhancing the Petitioner's sentence to a prison term that

-17-

remained within the statutory maximum as set forth in the statutes defining the offenses charged. Relatedly, the Petitioner argues that his appellate counsel rendered ineffective assistance by not raising an <u>Apprendi</u> violation on direct appeal.  Appellate counsel need not raise every colorable claim on appeal.  <u>Jones v. Barnes</u>, 463 U.S. 745, 753-54 (1983).  Because Judge Gwin applied <u>Apprendi</u> in the manner mandated by the Sixth Circuit at that time, appellate counsel did not err in not rasing this issue on appeal, and the Petitioner cannot have suffered any prejudice.

For the foregoing reasons, the Petitioner's first ground for relief lacks merit.  <u>Apprendi</u>, <u>Blakely</u>, and <u>Booker</u> do not warrant a resentencing.

C. <u>Errors During the Sentencing Hearing</u>

In his second ground for relief, the Petitioner claims that he was "wrongfully convicted" of three murders because of Government misconduct, ineffective assistance of trial counsel, and denial of his rights to confrontation.  He further alleges that his appellate counsel rendered ineffective assistance by not raising these issues during direct appeal.

With respect to Government misconduct, the Petitioner alleges that investigators and prosecutors assumed him to be guilty of the alleged murders.  The Government engaged in misconduct essentially by failing to investigate other suspects and intimidating witnesses to obtain false evidence consistent with the Government's theory .

The Sixth Circuit applies a two-part analysis to determine whether the conduct of a prosecutor rises to the level of a due process violation.  <u>United States v. Carter</u>, 236 F. 3d 777, 783 (6th Cir. 2001); <u>Boyle v. Million</u>, 201 F. 3d 711, 717 (6th Cir. 2001).  First, the prosecutor's conduct must have been "improper." This assessment turns on whether the prosecutor merely acted based upon "reasonable inferences from the evidence," as is permitted, <u>Byrd v. Collins</u>,

-18-

209 F. 3d 486, 535 (6th Cir 2000), as opposed to misstating the evidence, which is not, Carter,

236 F3d at 784.  If the prosecutor's conduct is found to be improper the Court must then apply

the four-factor test set forth in United States v. Carroll, 170 F.3d 1380, 1385 (6th Cir. 1994) to

determine "whether the impropriety was flagrant," which amounts to a deprivation of

constitutional rights.  To determine flagrancy, the following four factors must be examined: (1)

whether the conduct of the prosecutor was misleading and prejudiced the defendant; (2) whether

the conduct was isolated or among a series of impropriety; (3) whether the conduct was

deliberate or accidental before the fact finder; and (4) the total strength of the evidence against

the accused.  Carter, 236 F3d at 783.

Here, the allegations against the Government amount to unsupported speculation.  Taken

at its essence, the Petitioner's argument is little more than a claim that the mere seeking of the

enhancement was misconduct.  Viewed in the context of the evidence against the Petitioner, the

Court concludes that there was no impropriety.

The remainder of the Petitioner's arguments under the second ground for the relief

comprise a recitation of numerous disagreements with the evidence presented during sentencing.

Such arguments were raised on direct appeal.  In the current motion, the Petitioner couches these

arguments as ineffective assistance of counsel, and the denial of the right to confrontation.  In

substance, however, these arguments constitute a relitigation of his claims during direct appeal

that the enhanced sentence was based upon "unreliable evidence".  For the reasons given by the

Sixth Circuit during direct appeal, the second ground for relief lacks merit.

D.  Actual Innocence

In his third ground for relief, the Petitioner claims that the trial court erred in enhancing

his sentence because he is "actually innocent" of the alleged three murders. He further alleges that his appellate counsel rendered ineffective assistance by not raising this issue on direct appeal. As with most of his second ground for relief, the third ground for relief is no more than an objection to the sufficiency of this evidence. This argument similarly lacks merit for the reasons given by the Sixth Circuit in affirming the sentence on direct appeal. Accordingly, the third ground for relief lacks merit.

     E. <u>The Magistrate Judge's Recommendation</u>

     As with this Court, for the most part the Magistrate Judge concludes that the Petitioner's grounds for relief lack merit. However, the Magistrate Judge still recommends that the Petitioner's motion be granted and that he be resentenced. The Magistrate Judge concludes that the trial judge misapplied U.S.S.G. § 5K2.1, which governs enhancements when a death occurs during the commission of the underlying offense of conviction. This Court disagrees.

     U.S.S.G. § 5K2.1 states:

> If death resulted, the court may increase the sentence above the authorized guideline range.
>
> Loss of life does not automatically suggest a sentence at or near the statutory maximum. The sentencing judge must give consideration to matters that would normally distinguish among levels of homicide, such as the defendant's state of mind and the degree of planning or preparation. Other appropriate factors are whether multiple deaths resulted, and the means by which life was taken. The extent of the increase should depend on the dangerousness of the defendant's conduct, the extent to which death or serious injury was intended or knowingly risked, and the extent to which the offense level for the offense of conviction, as determined by the other Chapter Two guidelines, already reflects the risk of personal injury. For example, a substantial increase may be appropriate if the death was intended or knowingly risked or if the underlying offense was one for which base offense levels do not reflect an allowance for the risk of personal injury, such as fraud.

Thus, there are three factors relevant to enhancement here: (1) matters that would normally distinguish between levels of homicide pursuant to U.S.S.G. § 2A1.1-4; (2) the means by which the life was taken; and (3) the extent to which the fraud guidelines do not reflect an allowance for the risk of personal injury.

The Magistrate Judge focuses only on the first factor, and even as to that factor, he commits error.  He presumes that the trial judge somehow was bound to adopt one of the homicide offense levels as the enhanced level here, either level 43 for first degree murder or 33 (at that time) for second degree murder.   That is not what guideline 5K2.1 says.  Rather, the court should consider the homicide offense levels, but the court is not required to select one as the enhancement.

Here, for various reasons, the actual enhanced level was 37, in between the guideline for first and second degree murders.  There is nothing inherently improper about an enhanced offense level that does not match a homicide guideline.

It is clear that Judge Gwin's inclination was to sentence the Petitioner based upon the offense level for first degree murder.  Much of the Magistrate's Judge's difficulty stems from the brevity of Judge Gwin's analysis, which was done only orally at sentencing, and not in a full written opinion.  Judge Gwin did not, as a checklist, go through each level of homicide in guidelines 2A1.1-4 (which also includes voluntary and involuntary manslaughter), and analyze whether or not each offense level was appropriate to this case.  The Magistrate Judge suggests that such lack of a detailed analysis means that Judge Gwin did not consider state of mind at all. The Court disagrees.  From his statements at the hearing,  Judge Gwin obviously considered state of mind and found premeditation.  He noted that the "[sentencing] commission has

-21-

concluded then, in the absence of capital punishment, life imprisonment for premeditated killing." (Sentencing Tr. at 274.) The fact that Judge Gwin did not discuss separately every homicide category does not mean that he did not consider state of mind at all. Judge Gwin in fact considered state of mind and found premeditation.

Relatedly, the Magistrate Judge concludes that there was insufficient evidence to find premeditation, and thereby first degree murder. Again, the Court disagrees. Judge Gwin stated that the Petitioner murdered Newman "so that the defendant could receive approximately $300 a month." (Sentencing Tr. at 274.) The Sixth Circuit adopted this finding. Mayle, 334 F.3d at 564, 568. This Court cannot see how killing one for SSI checks can be characterized as anything other than premeditated. The complexity required to forge and cash the SSI checks over an extended period belies any contention that this was somehow a spontaneous killing.

The specific evidence relied upon by Judge Gwin supports his enhancement. Such evidence included the fact that the Petitioner maintained a residence in close proximity to his victim, the details of the scheme to forge the Petitioner's signature and cash the checks, the lies he told to investigators and the victim's family, and the Petitioner's possession of important personal documents and possessions of the victim. All such evidence suggests a premeditated scheme to kill Newman to gain access to his SSI benefits.

The Magistrate Judge also does not address other factors contained in guideline 5K2.1 independent of the homicide guidelines. The nature of the killing favors an enhancement higher than the base offense level for second degree murder. Here, the Petitioner took advantage of a vulnerable member of society, befriending him and then killing him for his SSI benefits. The prior murders of Woehlk and Hazzard demonstrate a pattern of such predatory conduct.

-22-

In addition, this Court is influenced by the final sentence of guideline 5K2.1, which requires the Court to consider whether the guidelines for the underlying offense (fraud here) reflect an allowance for the risk of personal injury.  In this case, it is difficult to imagine any scenario by which fraud through forging SSI checks could risk injury, let alone death.  The only exception would be a greed-driven, intentional killing such as that which occurred here. Under such circumstances, an offense level of 37 is justified.

### III.  CONCLUSION

For the foregoing reasons, the Petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 is DENIED.

The Court next must determine whether to issue a certificate of appealability ("COA"). An appeal may not be taken from a final order in a 2255 proceeding unless a circuit justice or judge issues a COA.  28 U.S.C. § 2253(c)(1).  The district court need not wait for a petitioner to file a motion before ruling on the COA.  Castro v. United States, 310 F.3d 900, 901 (6th Cir. 2002).   The COA should indicate which specific issues satisfy the requisite showing.  Powell v. Collins, 332 F.3d 376, 389 (6th Cir. 2003).

A COA may issue if the applicant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  Such a showing is made upon demonstrating that:

> reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'

Slack v. McDaniel, 529 U.S. 473, 483-84 (2000), quoting, Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983).   The court should determine whether reasonable jurists would find its decision "debatable or wrong".  Slack, 529 U.S. at 484.

-23-

As to the Petitioner's first ground for relief, binding precedent is clear that the Apprendi/Blakely/Booker line of cases does not apply retroactively to collateral proceedings, and therefore are inapplicable to this case.  As to his second and third grounds for relief, the Petitioner's arguments are based largely on unsupported accusations and speculation, and lack merit based upon the Sixth Circuit's decision on direct appeal affirming the sentence.  In addition, no reasonable jurist could debate that Judge Gwin properly applied guideline 5K2.1 when enhancing the applicable offense level, and the Sixth Circuit already has ruled that the enhancement to level 37 is reasonable.  Accordingly, a certificate of appealability is denied.  For the same reasons, the Court also concludes that the Petitioner may not proceed *in forma pauperis* on any appeal.  See 28 U.S.C. § 1915(a)(3).

IT IS SO ORDERED.

*s/ John R. Adams*    January 23, 2007
UNITED STATES DISTRICT JUDGE